UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

CASE NO: 1:18-cv-20771-FAM

CORINNE PICCINETTI,

        Plaintiff,

vs.

MSC CRUISES, S.A.,

        Defendant.
_____/

## PLAINTIFF'S REPLY TO DEFENDANT'S AMENDED RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL RESPONSES TO DISCOVERY

Plaintiff, Corinne Piccinetti, hereby Replies to Defendant's Amended Response in Opposition to Plaintiff's Motion to Compel Responses to Discovery (hereinafter "Response in Opposition"):

### MSC'S INACCURATE "BACKGROUND" RECITATION

In an ironic twist, MSC contends that Plaintiff is attempting to create ambiguity about the wet and slippery floor that caused her to fall. MSC does so in an ongoing attempt to evade its discovery obligations. A full and fair reading of Plaintiff's deposition testimony leaves no doubt as to what happened: "Q. How do you know you slipped on water?

    A. I was laying in it.

    Q. Did you see the water before you ended up laying in it?

    A. No I did not see the water. I felt it.

    Q. After you slipped?

    A. Correct."

(*See* Deposition of Plaintiff, Pg. 101, attached hereto as Exhibit A).

*Piccinetti v. MSC Cruises S.A.Case No: 1:18-cv-20771-FAM*

Plaintiff describes the surface as being "slick." *Id*. She also describes it as "slimy"." *Id*. at Pg. 144, Ln. 17. She is specifically asked about the "presence of the greasy oily substance" and testifies that it "[c]ould have been anything." *Id*. Pg. 144, Ln 20. MSC would have the Court believe that the Plaintiff unequivocally testified that there was visible grease or oil on the floor of the area. She did not. She described a dangerously slick, slimy, and slippery floor that hurt her badly.

This is not the first time this floor has been likened to grease in testimony. A past Plaintiff injured in the same location, Sylvia Bauershmidt, also chose the word "grease" to describe the defectively dangerous slick feel of the subject flooring: "I was fine and then all of a sudden it was like **grease** lightning. I [sic] feet slipped out from under me and I landed on my back." (Deposition of Sylvia Bauershmidt, Pg. 129, Lns. 17-19, attached hereto as Exhibit B) (Emphasis added).

MSC's own witnesses and post-incident investigation also confirm the condition of the floor. MSC's investigating Safety Officer, Guisseppe Castellano, testified that the floor of the area of incident was wet, as did MSC's Corporate Representative: "He [the Safety Officer] looked at the condition of the deck. He did note that it was wet." (Deposition of MSC Corporate Representative , Pg. 76, Lns. 18-20, attached hereto as Exhibit C); "Based on the details of the accident that were documented by the safety officer, he noted that the floor was wet." *Id*. at Pg. 117, Lns. 3-5. The Safety Officer did not note that there was any grease or oil on the floor as MSC contends in its attempt to limit discovery. *Id*. at Pg. 123, Lns. 18-23.

The only ambiguity before the Court has been created by MSC. As predicted, despite initially stipulating to being "aware of prior slip and fall in the pool area of the Divina on a similar type of flooring," MSC now contends that it "has not identified any substantially similar incidents." (See Amended Response in Opposition to Motion to Compel, ECF No. 25, Pg. 6., ¶ B.). The Court

2

*Piccinetti v. MSC Cruises S.A.Case No: 1:18-cv-20771-FAM*

should not permit gamesmanship and evasion and should grant Plaintiff's Motion to Compel.[1]

### I.      MSC Should Be Compelled To Answer Interrogatory No. 15 And 16

MSC reliance on the "substantial similarity doctrine" to advance a relevance objection is factually wrong for the reasons outlined above, as well as legally inapposite. The "substantial similarity doctrine" deals with the admissibility of evidence at trial. It is well-established that the "substantial similarity" doctrine does not require identical circumstances, and allows for some "play in the joints" depending on the scenario presented and the desired use of the evidence. *Galarza v. Carnival Corp.*, No. 15-24380-CIV, 2016 WL 7539223, at *4 (S.D. Fla. Aug. 9, 2016) (citing *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015)). Notwithstanding, past incidents of slip and falls on water or wetness that occurred on Deck 14 at the outdoor pool of the MSC *Divina* are inadmissible under the "substantial similarity doctrine" based on the facts and testimony of this case, and nothing about the doctrine should serve to preclude MSC's discovery obligations.

Interrogatory No. 15 seeks specific categories of information that are needed for Plaintiff to prove her case, show the magnitude of the problem with the floor, refute MSC's defenses, and obtain additional information, details, and potential witnesses. MSC has provided none of the information sought and lodged a blanket objection. MSC's withholding of the sought after information and data has hindered Plaintiff's ability to contact potential witnesses, conduct additional depositions, and find additional facts and evidence prior to the close of discovery; such conduct is aimed at keeping the truth obscured from view. Discovery in this matter closes tomorrow, June 1, 2018. The Court

---

[1] The decisional law cited in Paragraph A of MSC's Response in Opposition, which deals with summary judgment proceedings and contract interpretation, is without application or bearing to the instant discovery dispute.

*Piccinetti v. MSC Cruises S.A.Case No: 1:18-cv-20771-FAM*

should compel a full and complete answer to Interrogatory No. 15 for all instances of slip and falls involving wetness, liquid, water or other wet transitory substances on the outdoor pool deck of the MSC *Divina* (the entire outdoor pool deck, and fully not in some hyper technical and extremely limited fashion that MSC unilaterally deems appropriate).[2]

As to Interrogatory No. 16, MSC does not take issue with providing class wide priors on the other *Fantasia*-class vessels or argue that the scope of the Interrogatory as it pertains to the *Fantasia*-class is improper. MSC's Corporate Representative testified about a select few such incidents on other vessels in the *Fantasia*-class, but he was admittedly unprepared. The discovery sought is absolutely relevant to prove notice and other issues at stake. Additionally, it is highly relevant because MSC has been comparing the slip and fall performance of the *Divina* to other vessels in the *Fantasia*-class as a part of its defense to this case:

" Q.   And how many accidents were attributed to wetness on the deck, deck 14?

   A.   I think there was- to wetness, there were 33.

   Q.   Is that a statistically significant figure given your expertise in this area.

   A.   Yeah, in my opinion, no. It's not statistically significant. The other thing I actually thought was interesting was when you compare the slip and falls on Divina, which seem to be statistically insignificant for the number of passenger transits across that deck, and you compare it with outer ships in the class, the Splendida, The Fantasia and Preziosa, it's higher than those ships. And one of the reasons I surmise is because Divina is in the US 100 percent of the time, in the Caribbean environment. People are using the pool more, there's high humidity, and I think, you know, there's a tendency to have wet conditions on that deck more than the other ships in the class."

---

[2]MSC contends that incidents of slip and fall that occur after Plaintiff's incident are not relevant. MSC has taken the position in this matter that the Divina was susceptible to increased slip and falls and wetness due to its itineraries in the Caribbean environment (*See* MSC Corporate Representative testimony, *Supra*, Exhibit C., Pg. 130, Lns. 9-25.). The MSC Divina now sails in Europe under a different climate and environment, and Plaintiff seeks corresponding details to test and refute MSC's climate/environmental performance defense.

*Piccinetti v. MSC Cruises S.A.* Case No: 1:18-cv-20771-FAM

(Deposition of MSC Corporate Representative, Exhibit C., Pg. 130., Lns. 9-25).

Accordingly, MSC should be ordered to respond fully to Interrogatory No. 16 for all instances of slip and falls involving wetness, liquid, water or other wet transitory substances on the outdoor pool decks of the *Fantasia*-class vessels (the entire outdoor pool decks of the *Splendida*, *Fantasia*, and *Preziosa*).

### II. *MSC's Indication That Defendant Has No Records Regarding Any Substantially Similar Incidents Is Blatantly False*

Plaintiff is incredibly disconcerted and perplexed about the allegations of Paragraph B., Pg. 6, of MSC's Response in Opposition, which states the following: "Mr. Allain [MSC's Corporate Representative] was asked about these prior incidents and testified about these incidents and that after a diligent search of prior incident records from both the MSC Divina and other Fantasia Class vessels, Defendant has not identified any substantially similar incidents." The following is his testimony about his limited knowledge of the existence of substantially similar incidents and MSC's lack of investigation or disclosure regarding such incidents:

> "Q. In preparing for the deposition today, did you do any research, sort of how you did today to find the prior slip and falls, as it would relate to the Splendida, Fantasia, or Preziosa.
>
> A. I reviewed some of the accident reports for those ships, yes.
>
> Q. Okay. So what I need to know is whether it's some or whether it's all?
>
> A. Some from I believe 2016 and then some from 2017.
>
> Q. So there could be more potentially?
>
> A. Yes.

(Deposition of MSC Corporate Representative, Exhibit C., Pg. 104-05., Lns. 16-25; 1).

MSC's Corporate Representative then went on to list the incidents of slip and fall he found

5

*Piccinetti v. MSC Cruises S.A.Case No: 1:18-cv-20771-FAM*

on other *Fantasia*-Class vessels from the few months he reviewed. However, it is unclear as to what else exists as he admitted to being unprepared at the time of the deposition. Accordingly, Plaintiff is confounded at how MSC can make the representations that it sets forth in Paragraph B., Pg. 6, of MSC's Response in Opposition. It also adds to the confusion, as predicted, stemming from MSC's initial stipulation to being "aware of prior slip and fall in the pool area of the Divina on a similar type of flooring." Substantially similar incidents quite clearly exist, they are relevant, and Plaintiff has a right to known the truth. The Court should grant Plaintiff's Motion to Compel.[3]

### III. Documents And Records Responsive To Requests For Production 19, 21, and 22 Exist And Have Been Withheld From Production Without Basis

MSC represents that "[o]ther than privileged incident reports, no other documents responsive to Plaintiff's Request for Production 19, 21, and 22 exist."

MSC's Corporate Representative testified to 33 past incidents involving slip and falls due to wetness in the same location. To begin, every one of those injured individuals would have provided a "Passenger Injury Statement" per MSC's policy. This is a written depiction of what happened to them and the condition of the floor. None have been provided in discovery in this case. Additionally, no corresponding medical records for any of those 33 injured individuals have been produced, which are also known to exist.

Furthermore, additional non-privileged documents that fall squarely within the Requests exist and have not been produced:

    Q.    Besides the incident reports themselves, do you have a list or some sort of an

---

[3]Plaintiff supplemented its Answer to Interrogatory No. 17 contemporaneously with the filing of its Response in Opposition on the evening of May 29, 2018, knowing that discovery would close three business days later. There appears to have been no basis for MSC's earlier refusal to answer it except for unfair gamesmanship aimed at disadvantaging Plaintiff through evasion of discovery.

6

*Piccinetti v. MSC Cruises S.A.Case No: 1:18-cv-20771-FAM*

excel spreadsheet that would list the names of those individuals?

A. No.

Q. So the 70 names would, in essence, only be available to you by looking at the accident reports?

A. That's correct.

Q. Are you aware if within MSC there is someone else that would have a list or some sort of a Matrix or an Excel spreadsheet that would name those accidents?

A. Yes.

Q. There is.

A. Yes.

Q. Who is that?

A. An individual, I don't know the specific name, but there's a database that is kept.

Q. And what is the name of that database?

A. It doesn't have a real formal name. It's just accident med reports, I believe is what it is called.

Q. If I wanted to request that spreadsheet, is there a formal name for that spreadsheet?

A. I'm not aware of a formal name for it, no.

(Deposition of MSC Corporate Representative, Exhibit C., Pg. 21-22, Lns. 9-25; 1-6).

This spreadsheet has been wrongfully withheld from production without basis. It should be ordered produced in its native format without alterations as it pertains to the MSC *Divina* and all *Fantasia*-Class incidents. The passenger injury statements and medical records for pertaining to the incidents from the MSC *Divina* and all *Fantasia*-Class incidents should be produced forthwith as well.

*Piccinetti v. MSC Cruises S.A.Case No: 1:18-cv-20771-FAM*

### III.      Requests For Production 34, 35, and 36

MSC also states that it possesses no responsive documents or records to Requests for Production Numbers 34, 35, and 36.  Plaintiff finds this claim dubious as safety meetings are conducted on a routine basis per MSC policy and several witnesses have testified that recorded minutes are kept of such meetings.  Plaintiff is highly concerned that MSC has been improperly withholding documents and  failing to ascertain what documents exist throughout the pendency of the litigation as part of a strategy of gamesmanship and evasion.[4]  The objection coupled with MSC's statement that no such responsive documents and records exist also causes Plaintiff concern.  If there are truly no responsive meeting minutes or notes mentioning or referencing walking safety, maintenance of floors, cleaning of floors, keeping dry of floors, accident prevention, slipperiness, or slip accidents, MSC should have just responded none without a caveat and objection.

### CONCLUSION

MSC's conduct in avoiding discovery appears far from legitimate and can only be seen for what it is: gamesmanship to gain an unfair advantage in the litigation.  It is clear from its conduct that MSC's discovery strategy is one of evasion, confusion, and taking conflicting positions without basis.  The Court should not stand for such unacceptable and improper behavior.  Plaintiff has been prejudiced as a result, and has had to file numerous discovery motions in this matter to get the most basic of discovery responses.  To date Plaintiff has not received meaningful answers to Interrogatories and documents and records have been withheld without basis.  This is all part and

---

[4]For instance, in addition to the excel spreadsheet described above, MSC's Corporate Representative revealed that other responsive documents to other Requests exist and have not been produced: there is an accident investigation policy that has not been produced (Deposition of MSC Corporate Representative, Exhibit C., Pg. 28, Lns. 10-17); there is a safety management system policy relating to pool safety guards that was not produced (Id. Pg. 53, Lns. 4-7).  MSC is either not looking for or improperly withholding directly responsive documents and records.

8

*Piccinetti v. MSC Cruises S.A.* Case No: 1:18-cv-20771-FAM

parcel of MSC's discovery strategy of disinformation and evasion.  The Court should grant Plaintiff's Motion to Compel Responses to Discovery.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order granting Plaintiff's Motion to Compel Responses to Discovery, along with any such other relief the Court deems just and proper.

>Respectfully submitted,
>
>By:  */s/ Thomas Graham*
>**Thomas Scolaro** (FBN 178276)
>Email: scolaro@leesfield.com
>**Thomas D. Graham** (FBN 89043)
>Email: graham@leesfield.com
>LEESFIELD SCOLARO, P.A.
>2350 South Dixie Highway
>Miami, Florida 33133
>Telephone: 305-854-4900
>Facsimile:  305-854-8266
>*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on this 31st day of May, 2018. I also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

>By:  */s/ Thomas D. Graham*
>Thomas D. Graham

*Piccinetti v. MSC Cruises S.A.Case No: 1:18-cv-20771-FAM*

**SERVICE LIST**
**CASE NO.: 18-cv-20771-FAM**

| | |
|---|---|
| Thomas Scolaro, Esq. | Jeffrey B. Maltzman, Esq. |
| scolaro@leesfield.com | jeffreym@maltzmanpartners.com |
| Thomas Graham, Esq. | Steve Holman, Esq. |
| graham@leesfield.com | steveh@maltzmanpartners.com |
| LEESFIELD SCOLARO, P.A. | Rafaela P. Castells, Esq. |
| 2350 South Dixie Highway | rafaelac@maltzmanpartners.com |
| Miami, FL 33133 | T. Alex Devine, Esq. |
| Phone: 305-854-4900 | alexd@maltzmanpartners.com |
| Fax: 305-854-8266 | Michael A. Sokolson, Esq. |
| *Attorneys for Plaintiff* | michaels@malzmanpartners.com |
| | MALTZMAN & PARTNERS, P.A. |
| | 55 Miracle Mile, Suite 300 |
| | Coral Gables, FL 33134 |
| | Phone: 305-779-5665 |
| | Fax: 305-779-5664 |
| | *Attorneys for Defendant* |